IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| BRUCE M. ANDERSON, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 2:14-cv-00426 |
| | § | |
| ROGELIO VALDEZ, | § | |
| Defendant. | § | |

**<u>DEFENDANT VALDEZ'S MOTION TO DISMISS</u>**

TO THE HONORABLE U.S. DISTRICT JUDGE:

Defendant, the Honorable Rogelio Valdez, in his official and individual capacities, files this Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 12) pursuant to Federal Rule of Civil Procedure 12(b)(1) and (b)(6), and would respectfully show the Court the following:

**BACKGROUND**

Plaintiff Bruce Anderson brings this suit against Chief Justice Valdez of the Court of Appeals for the Thirteenth Judicial District of Texas, in both his official and individual capacities, under 42 U.S.C. § 1983, alleging that Anderson was not hired for a staff attorney position with the Court of Appeals in retaliation for exercising his speech rights under the First Amendment. (Doc. 12). More specifically, Anderson alleges that Chief Justice Valdez influenced the decision to not hire him as a staff attorney for another justice on the court, Justice Perkes, because almost two years earlier Anderson had sent a letter to Chief Justice Jefferson of the Texas Supreme Court and the State Commission on Judicial Conduct, in which he asserted that Chief Justice Valdez may have violated state law. (Doc. 12 ¶¶ 10-11). As a result of the forgoing, Anderson seeks monetary

1

damages and attorney's fees, as well as an injunction ordering the Thirteenth Court of Appeals to hire him as a staff attorney.[1] *Id.* at 6.

## ARGUMENTS & AUTHORITIES

### I.  Standard of Review

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may challenge whether a court has subject matter jurisdiction.  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks statutory or constitutional power to adjudicate the case." *Home Builders Ass'n v. Miss, Inc. v. Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted). The party seeking to invoke jurisdiction bears the burden of demonstrating its existence. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

Dismissal is proper pursuant to Federal Rule of Civil Procedure 12(b)(6) when a party's complaint fails to state a claim upon which relief can be granted.[2] When a Defendant moves to dismiss claims for failure to state a claim upon which relief can be granted, "the central issue is whether, when considered in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Hughes v. The Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001) (internal quotations omitted). In analyzing a claim under Federal Rule of Civil Procedure 12(b)(6), the Court accepts all well pleaded facts as true, viewing them in the light most favorable to the plaintiff. *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004).

---

[1] Plaintiff's complaint styles this injunctive relief request as a one seeking to "reinstate" Plaintiff to the position of Staff Attorney for Justice Perkes.  However, by Plaintiff's own admission he was never a staff attorney for Justice Perkes, so this request really seeks to compel the Thirteenth Court of Appeals to hire Plaintiff in the first instance into that position.

[2] As a technical matter, a motion to dismiss filed after the Defendant answers, as here, is filed pursuant to Federal Rule of Civil Procedure 12(c).  However, the standard of review for a Rule 12(c) motion is the same as that under 12(b)(6). *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 313 (5th Cir. 2002) ("Rule 12(b)(6) decisions appropriately guide the application of Rule 12(c) because the standards for deciding motions under both rules are the same.").

However, "the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 127 S.Ct. at 1965). While the court accepts all well pleaded facts as true, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss for failure to state a claim. *Id*.

**II.     This suit should be held barred by judicial immunity.**

It is well settled that judicial officers are entitled to absolute immunity from damages in civil actions arising out acts performed in the exercise of their judicial functions. *Krueger v. Reimer*, 66 F.3d 75, 77 (5th Cir.1995). "[J]udicial immunity is an immunity from suit, not just from the ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). Such immunity is not overcome by allegations of bad faith and "applies even when the judge is accused of acting maliciously and corruptly." *Id*. "The doctrine of judicial immunity is supported by a long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability." *Antoine v. Byers & Anderson, Inc*., 508 U.S. 429, 435 (1993).

Of course, it is also true that a judge does not have absolute immunity for "actions taken outside of his judicial capacity" or for "actions that are judicial in nature, but occur in the complete absence of all jurisdiction." *Malina v. Gonzales*, 994 F.2d 1121, 1124 (5th Cir.1993). Relevant

here, Defendant recognizes that courts have found that a judge may not be entitled to absolute immunity for claims arising out of decisions involving the hiring or firing of certain types of court staff. *See Forrester v. White*, 484 U.S. 219, 226 (1988) (judge held not entitled to absolute immunity for claims arising from termination of probation officer). However, not every employment-related decision made by a judge necessarily falls outside the scope of judicial immunity. *See, e.g., Ohse v. Hughes*, 863 F.2d 22, 24 (7th Cir. 1988) (finding that, post-*Forrester*, a decision made by a panel of judges to terminate a probation officer could be barred by judicial immunity); *cf. Rheuark v. Shaw*, 628 F.2d 297, 304 (5th Cir. 1980) (judge's alleged failure to hire additional court reporters deemed a judicial act). Moreover, Defendant is aware of no case in which a court has expressly considered whether judicial immunity should be granted for claims arising out the hiring or firing of judicial law clerks or appellate court staff attorneys.

Accordingly, Defendant now moves to dismiss this case on the basis that this Court should find that a judge's decisions regarding the hiring of law clerks or staff attorneys that serve at the court's pleasure are so inextricably intertwined with a judge's exercise of his judicial function that claims arising from such decisions—such as the claim at issue here—should be deemed protected by absolute judicial immunity. Defendant is entitled to absolute immunity here because: (1) law clerks/staff attorneys are entirely unique in that they are the one employee hired by a judge that has no other purpose but to exercise the judge's judicial functions on his behalf and (2) permitting lawsuits to go forward that challenge a judge's decision to fire (or not hire) a person as a judicial law clerk or staff attorney would serve to directly undermine the interests the doctrine of judicial immunity was designed to protect.

In support of this proposition, it cannot be disputed that a law clerk "is probably *the one* participant in the judicial process whose duties and responsibilities are most intimately connected

4

with the judge's own exercise of the judicial function." *Oliva v. Heller*, 839 F.2d 37, 40 (2d Cir.1988) (emphasis added). Further, and unlike any other person that may be hired or fired by a judge, the entire job of a law clerk (or staff attorney) is to serve as essentially a proxy for the judge himself. For example, as one court succinctly noted:

> While only some of the tasks performed by court clerks are judicial in nature, the work of judges' law clerks *is entirely so*. Law clerks are closely connected with the court's decision-making process. Law clerks are "sounding boards for tentative opinions and legal researchers who seek the authorities that affect decision. Clerks are privy to the judge's thoughts in a way that neither parties to the lawsuit nor his most intimate family members may be." Moreover, the work done by law clerks is supervised, approved, and adopted by the judges who initially authorize it. A judicial opinion is not that of the law clerk, but of the judge. *Law clerks are simply extensions of the judges at whose pleasure they serve.* We conclude, therefore, that fo*r purposes of absolute judicial immunity, judges and their law clerks are as one*.

*Oliva v. Heller*, 670 F. Supp. 523, 526 (S.D.N.Y. 1987), *aff'd*, 839 F.2d 37 (2d Cir. 1988) (quoting *Hall v. Small Business Administration,* 695 F.2d 175, 179 (5th Cir.1983)) (emphasis added).

Indeed, the extremely unique nature of a law clerk's or staff attorney's position—and its close connection with judge's performance of their judicial duties—has resulted in a number of courts excluding such persons from the scope of federal employment laws. For example, the Sixth Circuit has recognized the uniquely close relationship between judges and their law clerks or staff attorneys in holding that court staff attorneys are "personal staff" of judges excluded from the scope of the FMLA. *See Horen v. Cook*, 546 Fed. Appx. 531, 534 (6th Cir. 2013). The Eleventh Circuit has similarly recognized that—because of the close advisor-advisee relationship between appellate court staff attorneys and appellate judges, staff attorneys are the "personal staff" of judges and are not covered employees under Title VII. *See Laurie v. Alabama Court of Crim. Appeals*, 88 F. Supp. 2d 1334, 1348 (M.D. Ala. 2000) *holding summarily aff'd* 256 F.3d 1266, 1269 (11th Cir. 2001) (finding that "regardless of who did the hiring and firing, the nature and circumstances of the relationship between the judges and the staff attorneys overwhelmingly

5

weighs in favor of excluding staff attorneys from the Title VII definition of 'employee'"). Other courts have similarly recognized that a law clerk represents his or her judge in the "eyes of the public, as any attorney or person interacting with [the clerk] would know that she was working directly for [the Judge]." *Graves v. Wayne County Third Circuit Court*, No. 08-11168, 2008 WL 3318726, 2008 U.S. Dist. LEXIS 60792, at *3 (E.D. Mich. Aug. 8, 2008).

      Given the foregoing—and unlike in those cases involving the hiring or firing of probation officers, court clerks or other court administrative staff, where Defendant recognizes judicial immunity has not been found—a judge's decision to hire (or not hire) a person as a law clerk or staff attorney is a decision that is singularly unique and "judicial" in nature. It is a decision that is part and parcel of the judge's judicial decision-making activity in that it constitutes the judge's act of deciding who will serve as his advisor and aide in the commission of his judicial acts. Given this, the various decisions a judge may make in the course of selecting a law clerk or staff attorney to work for him (or his court) necessarily implicate *how* a judge (or court) goes about making judicial decisions. Indeed, it could be expected that a judge (or court) is likely to seek to hire clerks or staff attorneys that appear like-minded to the judges in the manner of their deliberative process. As such, a suit such as the instant matter, which seeks to inquire into the reasons a judge (or court) may have hired one person over another as their law clerk or staff attorney, would—if allowed to go forward—necessarily involve discovery that would entail an entirely improper intrusion into how a judge (or court) goes about engaging in that judicial function.[3]

---

[3] For example, if permitted to go forward this suit would necessarily involve discovery and/or testimony related to Plaintiff's prior performance in drafting opinions, or otherwise assisting the justices of the Court of Appeals in deciding cases, when he previously served as a staff attorney on the Court for a now retired Justice. In fact, some of the discovery requests Plaintiff has already propounded on Defendant (and to which Defendant is objecting and seeking protection) request this very type of information. Because such confidential matters may necessarily concern a basis the justices of the Thirteenth Court of Appeals may have had for not hiring Plaintiff, which in no way relates to the alleged "speech" Plaintiff made to the

6

For this reason, a judge's decisions as to the hiring of clerks and staff attorneys implicate the same interests that are intended to be protected by the application of the judicial immunity doctrine. More particularly, courts have long recognized that "it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Bradley v. Fisher*, 80 U.S. 335, 347 (1872). Further, commentators have suggested that the particular, unique functions of a law clerk render a judge's employment decisions related to such persons ones for which the judge should be entitled to absolute immunity. *See, e.g*, Jeanne F. Pucci, IMMUNITY DOCTRINES AND EMPLOYMENT DECISIONS OF JUDGES, 55 Fordham L. Rev. 621, 654 n.176 (1987) (arguing that law clerks "are specifically hired to directly assist judges in the judicial process by researching the law, making recommendations, and drafting the judge's opinions on the merits of cases before him. *Since the actual rulings made by a judge are directly affected by his judicial clerk, the employment decision concerning the clerk is likely to be considered an immune act*.") (emphasis added).

Given all of this—and unlike those cases involving a judge's hiring of purely administrative court staff—a judge should be deemed immune from suits arising from the hiring of law clerks or staff attorneys so as to ensure a judge is "free to act upon his own convictions," *Bradley*, 80 U.S. at 347, in deciding who shall act as his aide and advisor in the crafting of opinions of his court. *Cf. Rheuark v. Shaw*, 628 F.2d 297, 304 (5th Cir. 1980) (judge's alleged failure to hire additional court reporters to alleviate backlog of statements of fact needing to be prepared for

---

Supreme Court and SCJC, Defendant may well be required to reveal this confidential information in order to defend this suit. However, requiring any of the Justices of the Court of Appeals to engage in the production of such evidence to defend this case would undermine the very interests the doctrine of judicial immunity is designed to protect, which is, among other things, avoiding improper inquiries into, and collateral attacks on, the judicial decision-making process.

use on appeal deemed a judicial act, such that claims arising from this alleged failure to hire were barred by judicial immunity); *see also Slavin v. Curry*, 574 F.2d 1256, 1263-64 (5th Cir. 1978) *modified on other grounds*, 583 F.2d 779 (5th Cir. 1978) (judge immune from claims arising from "the supervision of court reporters," because it was a judicial act in Texas, and noting that—like law clerks and staff attorneys—"[u]nder Texas law trial judges select their court reporters, who thereafter serve during the pleasure of the judge").

Further, to the extent the Court finds that a judge's hiring of judicial law clerks or staff attorneys for his court or chambers is a judicial act entitled to immunity, the Plaintiff's claim for an injunction requiring the court to hire him is also barred. This is because federal law provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 USC § 1983.

**III.     Alternatively, Chief Justice Valdez is entitled to qualified immunity from suit.**

Even if this Court finds that Chief Justice Valdez is not entitled to absolute judicial immunity, he should still be found to be entitled to qualified immunity based on the claim pled against him, because Plaintiff cannot show—even taking Plaintiff's factual allegations as true—that Chief Justice Valdez's alleged acts constituted a violation of clearly established law.

It is well settled that, in order to overcome a state official's qualified immunity (including at the motion to dismiss stage), a plaintiff must plead specific *facts* that would show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (internal quotations and citations omitted). Accordingly, qualified immunity bars suits against state officials "if their conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known." *Walker v. Livingston*, 381 Fed. Appx. 477, 479 (5th Cir. 2010) (citing *Pearson v. Callahan*, 555 U.S. 223, (2009)). The contours of the right alleged to have been violated by the state official "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) ("in the light of pre-existing law the unlawfulness must be apparent"); *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 257 (5th Cir. 2005) ("the unlawfulness of [the] alleged conduct" must be "readily apparent from relevant precedent in sufficiently similar situations"); *see also., Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013) (the court must "be able to point to *controlling* authority—or a *robust consensus* of persuasive authority—that defines the contours of the right in question with a high degree of particularity") (emphasis added and internal quotations omitted).

Relevant here, it has long been the case that "the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). The Supreme Court has explained that:

> two inquiries [] guide interpretation of the constitutional protections accorded to public employee speech. The first requires determining whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech. If the answer is yes, then the possibility of a First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.

*Id.* (internal citations omitted). Here, Plaintiff has failed to allege sufficient, specific facts that would show that Chief Justice Valdez's alleged actions violated "clearly established" First Amendment law. More specifically, Plaintiff has not plead specific facts that would support a conclusion that Chief Justice Valdez could have even learned of the alleged protected statements made "confidentially" by the Plaintiff to the Supreme Court of Texas and the State Commission

9

on Judicial Conduct (SCJC) before Chief Justice Valdez allegedly made the challenged hiring decision. Further, Plaintiff cannot show that his reports to the Supreme Court and SCJC qualify as "citizen speech" protected by the First Amendment.

### A. Plaintiff has failed to allege *specific* facts—as he is required to do—to demonstrate Chief Justice Valdez had reason to know of the admittedly "confidential" reports.

Plaintiff has failed to allege facts to support a claim that Chief Justice Valdez violated Anderson's speech rights because Anderson fails to allege actual facts to show that Chief Justice Valdez had any reason to even know of Anderson's alleged protected statements. As such, Anderson's suit should be dismissed because he has failed to support his conclusory assertion that he was not hired because of the reports he allegedly made. *See, e.g., Wetherbe v. Smith*, No. 13-11162, 2014 U.S. App. LEXIS 22467 (5th Cir. Nov. 24, 2014) (dismissing First Amendment retaliation claim because plaintiff failed to allege facts to support finding defendant even knew of alleged protected speech at the time employment decision was made).

For example, Anderson admits in his Complaint that he asked Chief Justice Jefferson to keep his letter to him "confidential," (Doc. 12 ¶10), and he fails to allege that this letter was known to anyone other than Chief Justice Jefferson or the Supreme Court's General Counsel, who responded to the letter and directed Anderson to the SCJC. To the extent Anderson claims he then made a complaint to the SCJC, he fails to allege facts to support any conclusion that his complaint was known to anyone outside of the SCJC. For example, while Anderson states that he personally received a letter from the SCJC indicating that his complaint would be investigated, (Doc. 12 ¶ 11), Anderson fails to allege any facts to support a finding that his complaint was ever made public, or that there was any basis for his identity as a complainant to ever become known to Chief Justice Valdez. To the contrary, state law makes clear that if the SCJC's preliminary investigation finds an "allegation…is unfounded or frivolous," then "the commission shall terminate the

10

investigation" and no further action is taken. TEX. GOV'T CODE § 33.022(b). In that case, the judge who is the subject of the complaint has no reason to ever learn of the complaint because (1) the judge is only contacted by SCJC if it decides to conduct a full investigation, *see* TEX. GOV'T CODE § 33.022(c)(1); and (2) a complaint filed with SCJC is confidential by law, *see* TEX. GOV'T CODE § 33.032(a). Anderson does not allege that his complaint went anywhere beyond the entirely confidential, preliminary investigation stage, nor does he allege that he ever informed Chief Justice Valdez he made the complaint. Given this, he has failed to allege facts to support a conclusion that the statements he made to the SCJC were ever made known to Chief Justice Valdez.[4]

Anderson attempts to avoid the fact that his alleged "protected activity" had no reason to be known to Chief Justice Valdez by vaguely asserting that "Justice Perkes told Anderson in words or substance that, because Anderson gave testimony against the Chief, the Chief told all of the Justices not to allow Anderson to work for Justice Perkes." (Doc. 12 ¶ 13). This statement, however, is insufficient to overcome a claim of qualified immunity, because this deliberately vague allegation still fails to support a conclusion that Chief Justice Valdez knew of Anderson's alleged statements to Chief Justice Jefferson and the SCJC. *See Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir. 1995) (when qualified immunity defense raised, the court "need not allow any discovery unless it finds that plaintiff has supported his claim with *sufficient precision and factual specificity* to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts") (emphasis added). For example, Anderson fails to specifically allege—as he is required to do under *Schultea*—what *actual* "words or substance" were relayed by Justice Perkes to Anderson to support any conclusion that Chief Justice Valdez had any reason to know of Anderson's statements

---

[4] If they existed, Anderson would be the person to have the knowledge to allege facts to show the complaint went past the preliminary investigation stage, if it actually did, because SCJC is required by law to provide a complainant like Anderson with the final disposition of the complaint. TEX. GOV'T CODE § 33.033. The fact that Anderson omits any such allegation from his Complaint is telling.

11

to Chief Justice Jefferson and the SCJC. *See Schultea*, 47 F.3d at 1432 ("plaintiff cannot be allowed to rest on general characterizations, but must speak to the factual particulars of the alleged actions, at least when those facts are known to the plaintiff"). Second, Anderson fails to allege any specific facts to support a conclusion that Justice Perkes' alleged reference to "testimony" Anderson "gave…against the Chief" is in any way even connected to Anderson's alleged statements to Chief Justice Jefferson and the SCJC.[5] Put simply, this single, deliberately vague sentence in Anderson's complaint—which is his lone attempt to even suggest Chief Justice Valdez made the alleged hiring decision based on statements Anderson made in the past—is entirely insufficient, as a legal matter, to show that Chief Justice Valdez made an alleged hiring decision because of Anderson's complaints to Chief Justice Jefferson and the SCJC.

### B. Plaintiff cannot show that it has been "clearly established" that his alleged speech is even subject to First Amendment protections.

Even if this Court finds Anderson has alleged sufficient facts from which a conclusion could be drawn that Chief Justice Valdez knew of Anderson's alleged statements to Chief Justice Jefferson and the SCJC at the time he made the alleged hiring decision, Anderson's First Amendment claim still fails to overcome Chief Justice Valdez's qualified immunity as a matter of law because the statements to Chief Justice Jefferson and the SCJC were not instances in which Anderson "spoke as a citizen on a matter of public concern." *See Garcetti*, 547 U.S. at 418. This is because, by his own admission, Anderson's complaints to Chief Justice Jefferson and the SCJC

---

[5] Indeed, because Anderson fails to allege specific facts to explain what this reference to "giving testimony" could even mean, he has failed to show that it is a reference to the particular type of "citizen speech" that is protected by the First Amendment. Anderson's failure to allege such specific facts constitutes a failure to properly engage Defendant's assertion of qualified immunity. At minimum, Anderson should be ordered to reply to this assertion of qualified immunity to plead such specific facts. *See Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) ("When a public official pleads the affirmative defense of qualified immunity in his answer, the district court may, on the official's motion or on its own, require the plaintiff to reply to that defense in detail. By definition, the reply must be tailored to the assertion of qualified immunity and fairly engage its allegations.")

concerned information he learned, and reported, in the course of the performance of his duties to his government employer, and not as a private citizen. *See* (Doc. 12 ¶ 9). And, regardless of whether this Court finds that the complaints do constitute protected speech under the First Amendment, Anderson still cannot demonstrate that it was "clearly established" *at the time of the alleged challenged hiring decision* that his statements constituted protected citizen speech. This, in and of itself, serves to entitle Chief Justice Valdez to qualified immunity and immediate dismissal of the claims against him.

It is settled that speech that arises out of a public employee's job duties is not protected by the First Amendment. *See Garcetti*, 547 U.S. at 418. Here, Anderson claims that his alleged protected speech came about as a result of then-Justice Vela's specific request that Anderson, her then-staff attorney, advise her on whether information she supposedly learned as a member of the court constituted a violation of law by Chief Justice Valdez. (Doc. 12 ¶ 9). Given that the speech Anderson puts at issue in this case as the basis for his First Amendment claim arose, by his own admission, from this performance of a specific job duty his government employer directed him to perform, he cannot show that the speech was protected under the First Amendment. *See Garcetti*, 547 U.S. at 421 ("when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes"). Moreover, the fact that Anderson then allegedly took his assertion that Chief Justice Valdez may have violated the law to entities "outside" of the Thirteenth Court of Appeals did not transform Anderson's actions into protected speech. *See, e.g., Gibson v. Kilpatrick*, 12-60905, 2014 U.S. App. LEXIS 23330, 2014 WL 6997642, at *6 (5th Cir. Dec. 11, 2014) (explaining that reporting to entity outside of actual employer does not necessarily turn report into protected speech and citing with approval holding that a "police chief's report of a mayor's alleged election law violations to state police is not

protected because state police were the most appropriate authority to carry out the investigation"). Here, Anderson's alleged "confidential" reporting of his allegations against Chief Justice Valdez to entities that may have oversight over him (i.e., the Supreme Court and the SCJC) constituted the precise type of "up the chain" reporting that weighs in favor of Anderson's alleged speech being deemed not protected. *See id.* (holding speech made to an outside agency was not protected, and finding it "instructive" that the "state agencies [the plaintiff] contacted may well have been the most appropriate entities to receive the information"). Further, the admissions in Anderson's complaint show that he made these reports up that chain while he was still working at the Thirteenth Court of Appeals for Justice Vela. (Doc. 12 ¶¶ 8, 11).

Given all of this, Anderson has failed to plead sufficient facts to establish that, at the time Chief Justice Valdez made the alleged challenged hiring decision, it was "clearly established" that Anderson's alleged reports to the Supreme Court and SCJC constituted protected speech. *See Gibson*, 2014 WL 6997642 (finding defendant entitled to qualified immunity because plaintiff's "communications to the outside agencies" were "distinguishable from previous cases in which we have held that communications outside the chain of command are speech as a citizen" such that the court could not find that the defendant's actions were a violation of "clearly established constitutional rights"). As a result, Chief Justice Valdez is entitled to qualified immunity from claims made against him in his individual capacity. *See id.*

### IV. Plaintiff's request that this Court order a state appellate court to hire him impermissibly intrudes into the independent function of the Texas judiciary.

For the reasons stated above, Anderson has failed to state a colorable violation of the First Amendment, such that any First Amendment claim made against Chief Justice Valdez in any

14

capacity—either official or individual—should be dismissed.[6] Moreover, to the extent Anderson amended his complaint to bring a claim for injunctive relief against Chief Justice Valdez in his official capacity, that claim should be dismissed for the additional reason that the relief Anderson requests would impermissibly interfere with sound operations of a Texas state appellate court and violate principles of federalism.

More specifically, Anderson asks this Court to order Chief Justice Valdez to hire Anderson as a staff attorney for Justice Perkes. (Doc. 12 ¶ 26(c)). Any such request—which requires this Court to enter an order commanding a state court as to how it must go about hiring its personnel—would improperly intrude into the Thirteenth Court of Appeals' discretionary decisions. Indeed, a number of courts have held that issuance of an order that seeks to direct a court's actions in personnel matters should be avoided. *See First Judicial District of Pennsylvania v. PHRC*, 727 A.2d 1110 (Pa. 1999) (concluding that directing a court to act or not to act in a personnel matter is interference with the operation of the courts which is prohibited by the separation of powers doctrine); *Court of Common Pleas of Erie County v. PHRC*, 682 A.2d 1246, 1248 (Pa. 1996) (reasoning that "in order to carry out the duties delegated to the judiciary by the Constitution, the courts must retain the authority to select the people who are needed to serve in judicial proceedings and to assist judges in performing their judicial duties"); *State v. LaFrance*, 471 A.2d 340 (N.H.

---

[6] Anderson also makes a claim asking the court to declare "acts and practices" complained of to be in violation 42 U.S.C. § 1983 and to enjoin such practices. (Doc 12 ¶ 26(a) and (b)). However, this request is nonsensical because 42 U.S.C. § 1983 is not itself a substantive law that restrains behavior, but rather is merely a procedural vehicle through which persons are allowed to bring suit to enjoin state actors to prevent *ongoing* violations of federal rights conferred under *other* law. *See Albright v. Oliver,* 510 U.S. 266, 271 (1994). Anderson fails entirely to explain what "acts and practices" of the Court constitute an *ongoing* violation of any federal right. Rather, this case arises out of a single, *past* alleged violation alleged. As such, he has failed to state a claim for which relief can be granted as to his claim for a declaration and injunction as to any Court "practices." *See Green v. Mansour,* 474 U.S. 64, 73 (1985) (explaining that in the absence of a basis to enjoin an ongoing violation of law, court lacks jurisdiction to issue stand-alone declaration declaring an alleged past violation to have been unlawful).

1983) ("The power of the judiciary to control … the actions of officers of the court and the environment of the court is a power absolutely necessary for a court to function effectively and do its job of administering justice"); *Chief Administrative Justice of Trial Court v. Labor Relations Com.*, 533 N.E.2d 1313, 1317 (Mass. 1989) ("any remedy requiring the current first justice of the court to permit Ferraro to resume his duties within that judge's courtroom would interfere impermissibly with the judicial function"). Moreover, any federal court order seeking to direct a state court as to who it must specifically hire for a position of trust, like a staff attorney, is of the nature of a mandamus, and federal courts are barred from issuing such orders against state officials. *See, e.g., Noble v. Cain*, 123 Fed. Appx. 151, 152 (5th Cir. 2005) ("mandamus relief…is not available to federal courts to direct state officials in the performance of their duties and functions"). Indeed, Defendant has uncovered no opinion from any court that has endorsed the availability of mandatory injunctive relief that would serve to direct a court in the hiring of its staff, and this Court should decline to be the first to find such relief is available.

## CONCLUSION

Therefore, for the foregoing reasons, Defendant respectfully requests that this Court GRANT this Motion and DISMISS this suit.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

/s/ Erika M. Kane
ERIKA M. KANE
**Attorney-in-Charge**
Southern District ID No. 963929
Texas Bar No. 24050850
JAMES "BEAU" ECCLES
Southern District ID No. 310917
Texas Bar No. 00793668
Assistant Attorneys General
Office of the Attorney General - 019
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 463-2120
(512) 320-0667 FAX
beau.eccles@texasattorneygeneral.gov
erika.kane@texasattorneygeneral.gov

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed electronically with the Court and delivered by CM/ECF on January 16, 2014, to:

Lawrence Morales II
THE MORALES LAW FIRM, P.C.
115 Travis, Suite 1530
San Antonio, Tx. 78205
*Attorney for Plaintiff*

/s/ Erika M. Kane
ERIKA M. KANE
Assistant Attorney General